UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————

MIRYAM ALLAM a/k/a MIRYAM MEYERS,

                         Plaintiff,

                                                  __Opinion & Order__

       -against-                                  09 Civ. 10580 (KMW)

JASON MEYERS,

                         Defendant.
———————————————————————————

WOOD, U.S.D.J.:

       Plaintiff Miryam Allam ("Plaintiff") brings this action against her former husband, Defendant Jason Meyers ("Defendant"), alleging battery, assault, intentional infliction of emotional distress ("IIED"), false imprisonment, and conversion.

       Defendant moves to dismiss the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)"). Defendant also moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), to dismiss Plaintiff's cause of action sounding in IIED.

       For the reasons stated below, Defendant's motion is GRANTED in part and DENIED in part.

I.      __Background__

       Unless otherwise noted, the following facts are drawn from Plaintiff's First Amended Complaint, and are taken as true for the purposes of Defendant's Rule 12(b)(6) motion.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

       A.      Plaintiff's Allegations

Plaintiff, a citizen of France (First Am. Compl.  ¶ 1), married Defendant, a citizen of New York (id. ¶ 3), on October 2, 2009.  (Id. ¶ 102).  Their marriage was annulled on April 4, 2010.  (See Pl. Opp. at 12; Def. Reply Mem. at 2.)

Plaintiff filed her First Amended Complaint in this diversity action[1] on March 23, 2010 (see Dkt. Entry No. 7), and makes out five claims for relief.  First, Plaintiff alleges that Defendant is liable in battery for

> hitting [Plaintiff], kicking her, pulling her hair, grabbing her, pushing her, throwing glass on her, pulling her in a window, pulling her off a windowsill and allowing her body to crash down onto a toilet, imprisoning her, ejaculating on her face, running cold shower water on her while imprisoning her in the shower, and otherwise physically assaulting her . . . .

(Id. ¶ 140; see also, e.g., id. ¶¶ 32, 40, 49, 55, 59, 62, 70, 75, 82, 96, 98, 106, 113-17.) Second, Plaintiff alleges that Defendant "repeatedly" placed Plaintiff "in fear of imminent bodily harm," and is thus liable for assault.  (See, e.g., id. ¶ 146).  Third, Plaintiff claims that Defendant is liable in IIED for orchestrating "a six-month[,] non-stop[,] deliberate and malicious campaign of harassment, intimidation, manipulation, and violence . . . against [Plaintiff]."  (Pl. Mem. at 19.)  This "campaign" allegedly consisted of Defendant's continuous physical and emotional abuse, which included

> slapp[ing Plaintiff], push[ing] and shov[ing] her, verbally assault[ing] her with despicable name calling, threaten[ing] her with deportation and arrest, [forbidding] her through threats of violence from meeting friends or speaking with her mother, mentally and physically control[ling] her against her will, and degrad[ing] her with demeaning sexual acts.

---

[1]     Plaintiff claims that federal jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(2), because (a) the amount in controversy exceeds $75,000; and (b) the controversy is between a citizen of France and a citizens of New York.  (See First Am. Compl. ¶ 6.)

(Id.; see also, e.g., First Am. Compl. ¶¶ 151-57.)  Fourth, Plaintiff claims that Defendant falsely imprisoned her by, "among other things, confining her to the bathroom, confining her to the shower, and falsely telling her that she would be arrested if she tried to leave the country." (First Am. Compl. ¶ 159.)  Finally, Plaintiff alleges that Defendant is liable in conversion for taking and selling her property.  (Id. ¶¶ 163-168.)

B.     The Instant Motion and Subsequent Procedural History

Defendant filed the instant motion on April 19, 2010.

Defendant first moves, pursuant to Rule 12(b)(1), to dismiss this action for lack of subject matter jurisdiction because "federal courts generally do not have jurisdiction over [domestic relations disputes]."   (Def. Mem. at 4) (internal quotations omitted). Alternatively, Defendant contends that, even if federal jurisdiction is proper, the Court "should decline to exercise jurisdiction over this action because the subject of [Plaintiff's] claims is the parties' conduct of their marriage and the events leading up to that marriage and because those claims can be fully and fairly determined in state court."  (Def. Mem. at 4-5.)

 Defendant also moves, pursuant to Rule 12(b)(6), to dismiss Plaintiff's IIED claim.  According to Defendant, Plaintiff's IIED claim "is deficient because the conduct she alleges is not sufficiently outrageous, the claim is duplicative of her other claims and comes within the ambit of other torts, and no claim exists for [IIED] between spouses." (Def. Mem. at 2.)

The matter was transferred to this Court on September 30, 2010.

II.     Discussion

A.     Subject Matter Jurisdiction

Defendant contends that this action must be dismissed because the Court lacks subject matter jurisdiction over it.[2]

        1.        Legal Standard

A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). The party invoking the jurisdiction of the Court bears the burden, once challenged, of proving that such jurisdiction exists. Id. See also Dowlah v. Dowlah, 09 Civ. 2020, 2010 WL 889292, at *1 (E.D.N.Y. Mar. 10, 2010). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

        2.        Applicable Law

"It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotations omitted). Plaintiff claims diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). (First Am. Compl. ¶ 6.) Section 1332(a)(2) requires that: (a) the amount in controversy exceed $75,000; and (b) the controversy be between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2).

---

[2]     Although Defendant raised the jurisdictional objection in his initial moving papers (Def. Mem. at 4), he concedes in his reply memorandum that subject matter jurisdiction is proper (see Def. Reply Mem. at 5 n.2). The Court examines the jurisdictional issue in order to: (a) remove any doubt as to the propriety of jurisdiction; and (b) provide a foundation for the abstention analysis.

Notwithstanding a plaintiff's satisfaction of the requirements of the diversity statute, federal courts are divested of the power "to issue divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992). This so-called "domestic relations exception" to federal jurisdiction is a judicially created doctrine, which stems from "misty understandings of English legal history," Marshall v. Marshall, 547 U.S. 293, 299 (2006); the Supreme Court's long-held construction of the diversity statute, id. at 307; and "sound policy considerations." Ankenbrandt, 504 U.S. at 703. These policy considerations are to the effect that state courts are best situated to adjudicate marital and child custody disputes. The Ankenbrandt Court, for example, explained that the issuance of divorce, alimony, or child custody decrees "not infrequently involves retention of jurisdiction by the court and deployment of social workers to monitor compliance. As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts . . . ." Ankenbrandt, 504 U.S. at 703-04. "Moreover, as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals . . . in handling issues that arise in the granting of such decrees." Id. at 704.

The exception applies to "a narrow range of domestic relations issues." Id. at 701; see also Marshall, 547 U.S. at 307; Williams v. Lambert, 46 F.3d 1275, 1283 (2d Cir. 1995). Specifically, the exception "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." Ankenbrandt, 504 U.S. at 704 (emphasis added); see also Marshall, 547 U.S. at 308. Accordingly, although state tribunals enjoy a "special proficiency" in handling issues related to the granting of divorce, alimony and

child custody decrees, federal courts are "equally equipped to deal with complaints alleging the commission of torts." Marshall, 547 U.S. at 308. See also Ankenbrandt, 504 U.S. at 704, 706-07 (upholding federal diversity jurisdiction where plaintiff alleged that her former husband was liable in tort for the abuse of their children); Schottenstein v. Schottenstein, No. 04 Civ. 5851, 2004 WL 2534155, at *8 (S.D.N.Y. Nov. 8, 2004); Tilley v. Anixter Inc., 283 F. Supp. 2d 729, 736 (D. Conn. 2003); Minot v. Eckardt-Minot, No. 92 Civ. 3334, 1993 WL 106043, at *1 (S.D.N.Y. Apr. 6, 1993).

       3.     Application of Law to Facts

The domestic relations exception to federal jurisdiction is inapplicable to the instant matter. Plaintiff does not request the issuance of a divorce, alimony or child custody decree, but merely seeks monetary damages for claims sounding in tort. (First Am. Compl. ¶¶ 139-168.) Indeed, Defendant (ultimately) concedes as much, stating in his reply memorandum that he "does not now argue[,] nor did he previously[,] that the 'domestic relations exception' mandates the dismissal of this action[, because P]laintiff here clearly does not seek a divorce, custody or child support." (Def. Reply Mem. at 5 n.2.)

Because it is undisputed that Plaintiff has satisfied the requirements of the diversity statute, 28 U.S.C. § 1332, and because the domestic relations exception is inapplicable, the Court finds that it has subject matter jurisdiction over this matter.

       B.     Abstention

Defendant asks the Court to abstain from exercising jurisdiction over this matter, because "the subject of [Plaintiff's] claims is the parties' conduct of their marriage and

the events leading up to that marriage[,] and because those claims can be fully and fairly determined in state court."  (Def. Mem. at 4-5; see also Def. Reply at 5 n.2.)

       1.     Applicable Law

Abstention from the exercise of federal jurisdiction is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976) (internal quotations omitted).  It is thus " 'the exception, not the rule.' " Ankenbrandt, 504 U.S. at 705 (quoting Colorado River Water Conservation Dist., 424 U.S. at 813).  See also CECOS Int'l, Inc. v. Jorling, 895 F.2d 66, 70 (2d Cir. 1990).  The Supreme Court has repeatedly counseled that abstention "should rarely be invoked, because the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.' " Ankenbrandt, 504 U.S. at 705 (quoting Colorado River Water Conservation Dist., 424 U.S. at 817).  See also Minot v. Eckardt-Minot, 13 F.3d 590 (2d Cir. 1994) (quoting Ankenbrandt).

The Court construes Defendant's motion as raising two related grounds for abstention.  First, in dictum, the Ankenbrandt Court stated that abstention "might" be appropriate "in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody."  504 U.S. at 705.  See also Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 13 (2004).  This would be so where a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." Ankenbrandt, 504 U.S. at 705-06 (internal quotations omitted).  See, e.g., Minot, 13 F.3d at 593-94 ("difficult questions of state law" presented where plaintiff sought to recover

on a theory of "tortious custodial interference," which had yet to be developed in the New York state courts; "[a] state court should lead the way in developing its law in this area . . . .")

The Ankenbrandt Court also noted that this type of abstention—referred to as Burford abstention[3]—"might well" be relevant "if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties." Ankenbrandt, 504 U.S. at 706. See also Minot, 13 F.3d at 595 (where evidence before the district court "plainly suggested that the dispute as to custody was still pending in state court," the district court's "decision to abstain . . . cannot be deemed an abuse of discretion"); Melnick v. Adelson-Melnick, 346 F. Supp. 2d 499, 505-06 (S.D.N.Y. 2004). By contrast, Burford abstention is inappropriate where, as in Ankenbrandt, "the status of the domestic relationship has [already] been determined as a matter of state law, and in any event has no bearing on the underlying torts alleged." Ankenbrandt, 504 U.S. at 706.

Second, a line of cases which originated in this Circuit prior to Ankenbrandt advises courts to abstain from exercising jurisdiction over "issues 'on the verge' of being matrimonial in nature . . . so long as there is no obstacle to their full and fair determination in state courts." American Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir. 1990); see also Mitchell-Angel v. Cronin, No. 95-7937, 1996 WL 107300, at *2 (2d Cir. 1996). American Airlines-type abstention is grounded on principles of comity and deference to the expertise of state courts in domestic relations matters. See American Airlines, Inc., 905 F.2d at 15 (citing Bossom v. Bossom, 551 F.2d 474, 475 (2d Cir.

---

[3]     See Burford v. Sun Oil Co., 319 U.S. 315 (1943).

1976) (per curiam) (abstention proper where: (a) the action is "on the verge" of being matrimonial in nature; (b) there is no obstacle to a full and fair determination in state court; and (c) "the interests of justice would be served by allowing the determination to be made [in state court] in view of [the state court's] great familiarity with matrimonial disputes and the absence of any such expertise by the federal courts.") & Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509, 515-16 (2d Cir. 1973).)

Subsequent decisions have limited American Airlines abstention to matters truly "on the verge" of being matrimonial in nature.  For example, claims have "verged on matrimonial in nature" where a plaintiff alleged malicious prosecution and abuse of process "as part of a conspiracy to deprive her of her children's companionship and affections"; this was because such allegations related "solely to the appropriateness of the child custody decree . . . ."  Mitchell-Angel, 1996 WL 107300, at *1-2.  Similarly, the standard was satisfied, and abstention was thus appropriate, where visitation rights were at issue,  Lomtevas v. Cardozo, No. 05 Civ. 2779, 2006 WL 229908, at *3 (E.D.N.Y. Jan. 31, 2006), and where a plaintiff sought relief related to the alleged violation of a state court order distributing marital property, Hamilton v. Hamilton-Grinols, 363 Fed. Appx. 767, 769 (2d Cir. 2010) ("The obligation that [plaintiff] seeks to enforce is . . . 'matrimonial in nature' and is best left to the greater interest and expertise of state courts in this field.") (internal quotation omitted).

2.      Application of Law to Facts

The Court finds that neither Burford- nor American Airlines-type abstention is proper in this case.

Burford-type abstention is inapplicable here.   Burford abstention applies to matters involving elements of the domestic relationship where "difficult questions of state law" bear on "policy problems of substantial public import whose importance transcends the result in the case then at bar."  Ankenbrandt, 504 U.S. at 705-06 (internal quotations omitted).  Plaintiff's common law tort claims for battery, assault, IIED, false imprisonment, and conversion do not satisfy that standard.  Cf. Minot, 13 F.3d at 593-94. Further, although Plaintiff's First Amended Complaint was filed approximately two weeks before the state court annulled the parties' marriage, the "status of the domestic relationship" "has no bearing on the underlying torts alleged."  Ankenbrandt, 504 U.S. at 706.

American Airlines-type abstention is likewise inappropriate.   The American Airlines doctrine advises courts to abstain where issues are " 'on the verge' of being matrimonial in nature . . . so long as there is no obstacle to their full and fair determination in state courts."  American Airlines, Inc., 905 F.2d at 14.  The common law torts herein alleged do not "verge" on matrimonial in nature merely because the alleged tortfeasor and victim were once married.  The allegations in Plaintiff's First Amended Complaint stand independent of the parties' domestic relationship; they are distinct from allegations implicating the appropriateness of a child custody decree, Mitchell-Angel, 1996 WL 107300, at *2, visitation rights, Lomtevas, 2006 WL 229908, at *3, and separation agreements, Melnick, 346 F. Supp. 2d at 505-06, which have been held to satisfy the "verg[ing on] matrimonial in nature" standard.  Exercising jurisdiction over the instant matter thus would not lead to this Court's intrusion upon state court expertise.  See Bossom, 551 F.2d at 475; Neustein v. Orbach, 732 F. Supp. 333, 339

(E.D.N.Y. 1990).  In light of the foregoing, Defendant's contention that Plaintiff's claims "can be fully and fairly determined in state court," (Def. Mem. at 4-5; <u>see also</u> Def. Reply at 5 n.2), is of no moment.

The Court thus DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction.

C.      Sufficiency of Plaintiff's IIED Claim

As previously noted, Defendant argues that Plaintiff's claim for IIED is deficient because "the conduct she alleges is not sufficiently outrageous, the claim is duplicative of her other claims and comes within the ambit of other torts, and no claim exists for [IIED] between spouses."  (Def. Mem. at 2.)

1.      Legal Standard

In order to survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, -- U.S. --, 129 S.Ct. 1937, 1949 (2009).  Where a plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed."  <u>Twombly</u>, 550 U.S. at 547.  The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor."  <u>Allaire Corp. v. Okumus</u>, 433 F.3d 248, 249-50 (2d Cir. 2006).

2.      Applicable Law

New York law applies to this diversity action.  See, e.g., Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 178 n.23 (2d Cir. 2004).  In applying New York law, this Court must follow the holdings of the New York Court of Appeals,  Williams v. J.P. Morgan & Co., Inc., 199 F. Supp. 2d 189, 191 (S.D.N.Y. 2002) (citing Calvin Klein Ltd. v. Trylon Trucking Corp., 892 F.2d 191, 195 (2d Cir. 1989)),  and must reject inconsistent rulings from its lower courts, Williams, 199 F. Supp. 2d at 191 (citing Levin v. Tiber Holding Corp., 277 F.3d 243, 253 (2d Cir. 2002)).

a.      New York's IIED Standard

In order to assert a valid claim for IIED pursuant to New York law, a plaintiff must demonstrate the following elements: "(i) extreme and outrageous conduct, (ii) an intent to cause—or disregard of substantial probability of causing—severe emotional distress, (iii) a causal connection between the conduct and the injury, and (iv) the resultant severe emotional distress." Lau v. S & M Enters., 898 N.Y.S.2d 42, 43, 898 N.Y.S.2d 42 (1st Dep't 2010).  See also Chukwuka v. City of New York, No. 08 Civ. 2095, 2010 WL 3780214, at *8 (E.D.N.Y. Sept. 21, 2010); Daniels v. Health Ins. Plan of Greater New York, No. 02 Civ. 6054, 2005 WL 1138492, at *2 (S.D.N.Y. May 12, 2005).

IIED is "a highly disfavored tort under New York law," and such claims generally "do not survive dispositive motions." Hallgren v. Bell Atlantic Corp., No. 99 Civ. 11937, 2000 WL 726496, at *3 (S.D.N.Y. May 30, 2000).  This is because "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute" IIED. Reyes v. Fairfield Properties, 661 F. Supp. 2d 249, 270 (E.D.N.Y. 2009) (quotation omitted); Bender v. City of N.Y., 78 F.3d 787, 790 (2d Cir. 1996) (citing Howell v. N.Y.

Post Co., 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699, 702 (N.Y. 1993)).  The conduct alleged must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' " Martin v. Citibank, N.A., 762 F.2d 212, 220 (2d Cir. 1985) (quoting Fischer v. Maloney, 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215, 1217 (1978)); Reyes, 661 F. Supp. 2d at 270.  See also Restatement (Second) of Torts § 46, cmt. d ("[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").  The outrageousness element may be satisfied where "severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation." Nader v. Gen. Motors Corp., 25 N.Y.2d 560, 569, 307 N.Y.S.2d 647, 654, 255 N.E.2d 765, 770 (1970).  See also, e.g., Price v. Mount Sinai Hosp., No. 07 Civ. 11318, 2010 WL 4910218, at *9 (S.D.N.Y. Nov. 23, 2010); Seltzer v. Bayer, 272 A.D.2d 263, 264-65, 709 N.Y.S.2d 21 (1st Dep't 2000).

Although courts have not precisely defined the contours of a "deliberate and malicious campaign of harassment or intimidation," (hereinafter "campaign"), certain attributes are readily apparent.  The Appellate Division has upheld IIED claims where the campaign at issue was "longstanding" and "systematic." Seltzer, 272 A.D.2d at 264-65 (citing cases).  In Murphy v. Murphy, for example, the Appellate Division affirmed the trial court's finding of outrageousness, where defendant conducted a year-long "campaign" against plaintiff-cohabitant, which included: (a) killing plaintiff's pet goose; (b) various threats; (c) "general abusive conduct"; and (d) "wanton destruction of plaintiff's belongings . . . ." 109 A.D.2d 965, 966, 486 N.Y.S.2d 457 (3d Dep't 1985).  Similarly, in Green v. Fischbein Olivieri Rozenholc & Badillo, the trial court's finding of

outrageousness was affirmed where plaintiff-tenant alleged that his landlord (and its counsel) engaged in "a course of conduct designed to harass, intimidate and interfere with plaintiff's tenancy" over a period of three years.  119 A.D.2d 345, 347, 507 N.Y.S.2d 148 N.Y.A.D. (1st Dep't 1986).  Specifically, the defendants in Green allegedly: (a) brought numerous eviction proceedings and other actions against plaintiff, all without legal cause or justification; (b) interrupted or discontinued certain services, which resulted in "the drastic deterioration of plaintiff's living conditions"; (c) interfered with plaintiff's mail; and (d) verbally abused plaintiff and his guests.  Id. at 350.  See also Shannon v. MTA Metro-North Railroad, 269 A.D.2d 218, 219, 704 N.Y.S.2d 208 (1st Dep't 2000) (pattern of harassment and intimidation conducted over a period of years); Warner v. Druckier, 266 A.D.2d 2, 3, 697 N.Y.S.2d 610 (1st Dep't 1999) (same).

Other courts have construed the "campaign" standard to require either allegations of "unrelenting," "day in, day out harassment," or allegations of harassment "accompanied by physical threats . . . ."  Lawson v. New York Billiards Corp., 331 F. Supp. 2d 121, 133 (E.D.N.Y. 2004) (internal quotations omitted) (citing cases).  For example, in Eves v. Ray, the court found that an alleged "campaign" satisfied the outrageousness element of IIED where, on at least four occasions during a three-month period,[4] a former husband attempted to intimidate his former wife's attorney by stalking the attorney and threatening him "physically and financially."  42 A.D.3d 481, 483, 840

---

[4]     See Eves v. Ray, 10 Misc. 3d 1058(A), No. 20770-99, 2005 WL 3423440, at *1-5 (N.Y. Sup. Ct. Dec. 5, 2005); see also id. at *7 ("When taken individually, each of Eves['s] actions may be viewed as crude or boorish behavior insufficient to support the jury's finding.  However, Eves['s] conduct must be viewed in its totality and coupled with Ray's knowledge that, in the past, Eves had made good on his threats of violence and displayed an unrelenting vengeful streak. . . . [T]he evidence of Eves['s] conduct, in its totality, allowed the jury to reasonably find in favor of Ray's claim for [IIED].").

N.Y.S.2d 105 (2d Dep't 2007).  The court in <u>Cavallaro v. Pozzi</u> similarly found a triable issue of fact as to outrageousness, where plaintiff alleged that defendant conducted a "constant campaign" which included threatening to kill plaintiff and his children. 28 A.D.3d 1075, 1078, 814 N.Y.S.2d 462 (4th Dep't 2006).  <u>See also</u> <u>Stram v. Farrell</u>, 223 A.D.2d 260, 262-63, 646 N.Y.S.2d 193 (3d Dep't 1996) (affirming jury's finding of a "campaign," the "most egregious" elements of which "involved vulgar language and outrageous threats directed at plaintiff and his young daughters").

Finally, courts applying New York law have found the existence of a "campaign" even absent (a) "unrelenting" harassment directed at a single plaintiff; and (b) physical threats.  In <u>164 Mulberry Street Corp. v. Columbia Univ.</u>, for example, several plaintiffs-restaurateurs alleged that defendant, a professor at Columbia University, wrote letters to plaintiffs as part of an academic study, which falsely accused plaintiffs of having caused severe food poisoning.  4 A.D.3d 49, 53, 771 N.Y.S.2d 16 (1st Dep't 2004).  The court found the defendant's conduct "outrageous," notwithstanding one plaintiff's failure to identify how many letters he received from defendant.  <u>See</u> <u>id.</u>  The court reasoned as follows: "these several letters could be construed in the aggregate as presenting a campaign of harassment, albeit directed against distinct individuals, so it cannot be said as a matter of law that the fact of individual impacts vitiates what seems to have been serial acts perpetrated by a single source."  <u>Id.</u> at 56.  The Appellate Division has also found the existence of a "campaign" where a defendant "made repeated telephone calls to the plaintiff's house only to hang up as soon as someone answered," but where no actual threats appear to have been made.  <u>Flatley v. Hartmann</u>, 138 A.D.2d 345, 346, 525

N.Y.S.2d 637 (2d Dep't 1988); see also Gill Farms Inc. v. Darrow, 256 A.D.2d 995, 997, 682 N.Y.S.2d 306 (3d Dep't 1998).

By contrast, allegations that a defendant affronted plaintiff in various ways, and in a randomized manner, may fall short of establishing a "deliberate and malicious campaign of harassment or intimidation."  For instance, a plaintiff failed to demonstrate the existence of a "campaign" where he alleged that defendant dumped a pile of cement on a sidewalk in front of plaintiff's home; tossed lighted cigarettes into plaintiff's yard; threw eggs on his front steps; and once threatened to paint a swastika on his house. Seltzer, 272 A.D.2d at 265.  According to the court, "three alleged incidents of littering and a particularly nasty remark" could not satisfy the pleading requirements for an IIED claim pursuant to New York law.  See also, e.g., Lawson, 331 F. Supp. 2d at 133 (no "campaign" where plaintiffs, a husband and wife, alleged that defendants: (a) conspired to have husband arrested; (b) made racist remarks about him to his wife; and (c) threatened him); Owen v. Leventritt, 174 A.D.2d 471, 472, 571 N.Y.S.2d 25 (1st Dep't 1991) (no "campaign" where defendant publicly made statements threatening to kill plaintiff).

### b.        Limitations to IIED Claims

Notwithstanding a plaintiff's satisfaction of the IIED pleading requirements, her IIED claims may be dismissed for other reasons.

### i.        Duplicative Claims

The New York Court of Appeals long ago cautioned that "it may be questioned whether the doctrine of liability for [IIED] should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability."  Fischer v.

Maloney, 43 N.Y.2d 553, 557-58, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978).  Although initially dictum, the Fischer limitation on IIED claims "has been consistently applied" to bar claims of IIED in both New York State and federal courts.  Moore v. City of N.Y., 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (Weinstein, J.).  See also Yang Feng Zhao v. City of N.Y., 656 F. Supp. 2d 375, 404 (S.D.N.Y. 2009) (citing cases); Sylvester v. City of N.Y., 385 F. Supp. 2d 431, 443 (S.D.N.Y. 2005) (citing cases); Galvin v. Francis, Nos. 5594/00, 009, 2003 WL 21696740, at *4 (N.Y. Sup. Ct. May 29, 2003) ("Plaintiff testified that . . . defendant shoved her into a kitchen wall . . . .  While that conduct supports a claim of battery, it would not be separately actionable as [IIED].").

ii.     Inter-Spousal Immunity

Following the lower courts' recognition of the tort of IIED, the New York Court of Appeals held that "strong policy considerations militate against judicially applying these recent developments . . . to the factual context of a dispute arising out of matrimonial differences."  Weicker v. Weicker, 22 N.Y.2d 8, 11, 237 N.E.2d 876 (N.Y. 1968).  The Weicker Court reasoned as follows: "[t]o sustain the claim for damages would result in a revival of evils not unlike those which prompted the Legislature in 1935 to outlaw actions for alienation of affections and criminal conversation . . . ."  Id. Accordingly, the plaintiff in Weicker failed to state a claim for IIED; the claim "arose out of matrimonial differences" because it was premised on the emotional distress resulting from her former husband's procuring an ex parte Mexican divorce—which plaintiff contended was invalid—and his allegedly illegal remarriage.  Id. at 8-9.

Subsequent decisions have similarly barred IIED claims "aris[ing] out of the interpersonal relationships in a matrimonial context . . . ."  Nacson v. Semmel, 292 A.D.

-17-

2d 432, 433, 738 N.Y.S.2d 888 (2d Dep't 2002); Eller v. Eller, 136 A.D.2d 678, 679, 524 N.Y.S.2d 93 (2d Dep't 1988); Wiener v. Wiener, 84 A.D.2d 814, 815, 444 N.Y.S. 2d 130 (2d Dep't 1981) ("The bounds in marital relationships are obviously circumscribed by the availability of another cause of action (i.e., a matrimonial action)"; where allegations of IIED  "cannot be said to be other than garden-variety disputes best resolved by bringing an action under the Domestic Relations Law or Family Court Act," such allegations must be dismissed).

Where "the circumstances do not constitute a mere matrimonial dispute," however, the inter-spousal immunity doctrine may not be applicable.  See Murphy, 109 A.D.2d at 966.  But see Baron v. Jeffer, 98 A.D.2d 810, 811, 469 N.Y.S.2d 815 (2d Dep't 1983) (holding that the policy concerns articulated in Weicker precluded IIED claim where parties were unmarried, but lived together "as husband and wife for an extended period of time (here, over two years)").

3.     Application of Law to Facts

The Court finds that some of Plaintiff's IIED claims are duplicative, and must accordingly be dismissed.  The Court also finds that the doctrine of inter-spousal immunity requires dismissal of those IIED claims which are predicated on alleged conduct occurring after the parties' marriage.  However, Plaintiff's residual allegations are sufficient to state a claim for IIED.

a.     Duplicative Allegations

Plaintiff appears to concede that her IIED claim is, in part, based upon alleged conduct that falls well within the ambit of other forms of traditional tort liability.  In attempting to sustain her IIED claim, Plaintiff argues that Defendant "repeatedly slapped

her, pushed and shoved her, . . . physically controlled her against her will, and degraded her with demeaning sexual acts." (Pl. Opp. at 19). To the extent that the foregoing alleged conduct is encompassed by the traditional tort theories of battery, assault and false imprisonment, such conduct may not form the basis of an IIED claim under New York law. See, e.g., Alhovsky v. Ryan, 658 F. Supp. 2d 526, 538 (S.D.N.Y. 2009); Rubio v. County of Suffolk, No. 01 Civ. 1806, 2007 WL 2993830, at *5 (E.D.N.Y. Oct. 9, 2007) (IIED claim "is duplicative of plaintiffs' State tort claims for false arrest, false imprisonment, assault and battery, and is hereby dismissed."); Galvin, 2003 WL 21696740, at *4.

In light of the foregoing, the Court GRANTS Defendant's motion to dismiss those IIED claims which are encompassed by other tort theories herein alleged.[5]

> b.   Inter-Spousal Immunity

Those IIED claims which are premised on conduct that occurred _during_ the parties' marriage must be dismissed pursuant to the inter-spousal immunity doctrine. See, e.g., Weicker, 22 N.Y.2d at 11; Nacson, 292 A.D. 2d at 432; Wiener, 84 A.D.2d at 815. However, those IIED claims which are premised on conduct that occurred _prior to_

---

[5]     Although Plaintiff cannot recover in IIED for conduct that falls within the ambit of traditional tort liability, she may nonetheless be compensated for the emotional distress that resulted from the commission of the "traditional" torts alleged here. It is well settled that a plaintiff alleging, for example, battery, may recover damages for the emotional suffering that flowed from that battery. See, e.g., Restatement (Second) of Torts § 47, cmt. b ("Where [the defendant's] tortious conduct . . . results in the invasion of another legally protected interest, as where it inflicts bodily harm, or imposes a confinement, emotional distress caused by the resulting invasion or by the conduct may be a matter to be taken into account in determining the damages recoverable. In many instances there may be recovery for emotional distress as an additional, or 'parasitic' element of damages in an action for such a tort.") (emphasis added). See also, e.g., Bender v. City of N.Y., 78 F.3d 787, 793 (2d Cir. 1996) (recognizing "emotional pain and suffering" as "part of the injury [plaintiff] suffered from the battery").

the parties' marriage are not affected by the inter-spousal immunity doctrine.  See, e.g.,

Murphy, 109 A.D.2d at 966.[6]

c.      Residual Allegations and "Outrageousness"

When viewed in the aggregate, Plaintiff's residual allegations depict conduct

sufficiently "outrageous" to satisfy New York's IIED pleading requirements.

Accepting Plaintiff's residual allegations as true for the purposes of the instant

motion, her First Amended Complaint portrays Defendant as having conducted a five

month-long, deliberate and malicious campaign of harassment and intimidation against

Plaintiff.  This campaign included Defendant's domination of Plaintiff through threats of

violence, and his subjection of her to relentless humiliation and emotional abuse.

Plaintiff alleges that Defendant threatened her in numerous ways: he threatened to kill

her, (First Am. Compl. ¶ 91); he stated that he "would never leave her in peace in this

---

[6]      Neither party referred this Court to Baron v. Jeffer, 98 A.D.2d at 811, in which
the Appellate Division—pursuant to Wiecker—barred an IIED claim between persons
who had cohabitated for over two years.  The Court finds, however, that the Appellate
Division's decision in Baron is inconsistent with the policy concerns underlying the inter-
spousal immunity doctrine.  See Weicker, 22 N.Y.2d at 11; Wiener, 84 A.D.2d at 815
(where allegations of IIED  "cannot be said to be other than garden-variety disputes best
resolved by bringing an action under the Domestic Relations Law or Family Court Act,"
such allegations must be dismissed); Murphy, 109 A.D.2d at 966.  In this diversity action,
the Court must follow the holdings of the New York Court of Appeals, and reject
inconsistent rulings from the lower courts.  See, e.g., Levin, 277 F.3d at 253; Williams,
199 F.2d at 191.  Accordingly, the Court declines to apply the Baron decision.
      Even if Baron were consistent with Wiecker, however, it would not bar Plaintiff's
pre-marriage IIED claims.  The Appellate Division in Baron held that "it would be
contrary to public policy to recognize the existence of [IIED] in the context of disputes . .
. arising out of the differences which occur between persons who, although not married,
have been living together as husband and wife for an extended period of time (here, over
two years)."  Baron, 98 A.D.2d at 811.  In the instant matter, the parties apparently lived
together for only a few months prior to marriage.  (See First Am. Compl. ¶¶ 30, 47, 102.)
Moreover, from their engagement in early July 2009, (id. ¶ 47), through their marriage on
October 2, 2009, (id. ¶ 102), the parties lived together merely "as fiancées," rather than
"as husband and wife," which is a prerequisite to the application of the Baron doctrine.

country," (id.); and he stated that "even if he were to have sex with five women in front of [Plaintiff], it 'would not be enough,' " (id. ¶ 97).  Plaintiff also alleges that Defendant controlled and marginalized her by forbidding her from visiting friends; he allegedly stated that "he and only he would find friends for [Plaintiff]."  (Id. ¶¶ 44-45.)

Plaintiff additionally alleges that Defendant constantly humiliated and demeaned her in public and in private.  For example, Defendant—apparently more than once— abandoned Plaintiff in restaurants after they had finished eating, without money, and without knowing her way home.  (Id. ¶ 57.)   On one occasion, Defendant barred Plaintiff from entering their apartment; the concierge escorted Plaintiff to the basement, where Defendant had "dumped [all her belongings] in garbage bags."  (Id. ¶¶ 87-89.)  Defendant also "call[ed] her nasty names in front of other people," (id. ¶ 56); he referred to her as a "dog," (id. ¶ 62), and a "bitch" (id. ¶ 70).  According to Plaintiff, Defendant told her "that it was exciting for him to see [Plaintiff] upset[,] and that seeing her upset turned him on." (Id. ¶ 60.)

In the aggregate, the foregoing allegations, if true, would establish that Defendant deliberately orchestrated a malicious campaign of harassment and intimidation against Plaintiff over the course of approximately five months.   Defendant's cumulative conduct—including a threat to kill Plaintiff, and other relentlessly abusive and domineering acts—is on par with that which other courts have deemed to satisfy the outrageousness requirement.  See, e.g., Murphy, 109 A.D.2d at 966; Eves, 42 A.D.3d at 483; Cavallaro, 28 A.D.3d at 1078; Stram, 223 A.D.2d at 262-63.  Indeed, Defendant's alleged repeated and systematic affronts to Plaintiff far exceed the single "impact" against individual restaurateurs that supported a finding of outrageousness in 164

Mulberry Street Corp., 4 A.D.3d at 53. And the noxiousness of Defendant's alleged affronts is far graver than the harassing telephone calls that supported a finding of outrageousness in Flately, 138 A.D.2d at 346.

In sum, when examined in the aggregate, Plaintiff's residual allegations, if true, establish a deliberate and malicious campaign of harassment and intimidation, and satisfy the outrageousness requirement of her IIED claim. The Court thus denies Defendant's motion to dismiss those residual IIED claims which are neither duplicative nor arose after the parties' marriage.

III.   Conclusion

For the reasons stated above, the Court DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction, and GRANTS in part and DENIES in part Defendant's motion to dismiss Plaintiff's IIED claims. (Dkt. Entry No. 8.)

By no later than March 14, 2011, the parties shall submit via ECF and facsimile a joint status letter detailing how they intend to proceed, and whether they wish to be referred to a magistrate judge for settlement discussions. Failing agreement, the case is deemed ready for trial May 2, 2011.


SO ORDERED.

DATED:   New York, New York
         February 24, 2011


_Kimba M. Wood_
KIMBA M. WOOD
United States District Judge

-22-